UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-8590-MWF(Ex)                          Date:  August 13, 2015

Title:     Russell Piccirillo -v- Testequity, Inc. et al.

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

           Relief Deputy Clerk:              Court Reporter:
           Cheryl Wynn                       Not Reported

           Attorneys Present for Plaintiff:  Attorneys Present for Defendant:
           None Present                      None Present

**Proceedings (In Chambers):**   ORDER GRANTING DEFENDANTS TESTEQUITY LLC AND DANIEL COPSEY'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT [26]

    Before the Court is the Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted, or, in the Alternative, Motion for More Definite Statement (the "Motion"), filed by Defendants TestEquity LLC and Daniel Copsey ("Defendants") on June 11, 2015.  (Docket No. 26).  The Court has read and considered the papers filed on these Motions, and a hearing was held on July 20, 2015.  For the reasons stated below, the Motion to Dismiss is **GRANTED** *with leave to amend*.

**Background**

    On November 5, 2014, Plaintiff Russell Piccirillo filed a Complaint in this Court, alleging fourteen claims against twenty-five named defendants.  (Docket No. 1).  To date, it appears that only Defendants TestEquity LLC, Dan Copsey, Karla Ksan, and Leslie Gale have been served.  (Docket Nos. 15–18).  The served defendants met and conferred with Plaintiff in an effort to streamline the case.  (Docket Nos. 19, 21).  Based on these discussions, the parties stipulated to the filing of an amended Complaint.  (Docket No. 21).  Plaintiff filed his First Amended Complaint ("FAC") on May 12, 2015.  (Docket No. 22).

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-8590-MWF(Ex)                    Date:  August 13, 2015

Title:     Russell Piccirillo -*v*- Testequity, Inc. et al.

     The parties again met and conferred, and decided that further amendments were necessary to clarify Plaintiff's claims and allegations.  (Docket No. 23).  Plaintiff filed the operative Second Amended Complaint ("SAC") on May 28, 2015.  (Docket No. 25).  The SAC alleges nine claims against eleven named defendants: TestEquity, Inc.; TestEquity LLC; Evercore Limited Partners, LLC; Evercore TE Holdings; Daniel Copsey; Digital Retirement Solutions; TE Profit Sharing Plan; TE Holdings, LLC; TestEquity, LLC Delaware; Edmond Yankijitz; and Terry Landers.  (*Id.*).  The Court notes that served defendants Karla Ksan and Leslie Gale no longer appear as defendants in the caption.  The Court therefore deems Karla Ksan and Leslie Gale voluntarily dismissed from the action.

     While the SAC lists eleven claims in the caption, Plaintiff appears to plead only nine of these claims, with some numbering errors. For clarity the Court will refer to the claims as numbered by Plaintiff: First Claim for Wrongful Termination in Violation of Public Policy; Second Claim for Wrongful Termination in Breach of Contract; Third Claim for Discrimination on the Basis of Disability in Violation of California Government Code section 12940; Fourth Claim for Unfair Business Practices in Violation of California Business and Professions Code sections 17200, *et seq.*; Fifth Claim for Retaliation; Seventh Claim for "Whistle Blower"; Eighth Claim for Violation of FMLA; Ninth Claim for ADA Discrimination; and Twelfth Claim for Negligence.

     As explained by Plaintiff, "this is a wrongful termination / retaliation / whistleblower action" arising out of Plaintiff's employment with "TestEquity," "a company with a plethora of names and identities."  (Opp. at 1).  According to the SAC, on September 1, 1980, Plaintiff was hired as a metrologist by RAG Electronics.  (SAC ¶ 24).  On or about 1996, RAG Electronics changed its name to TestEquity, Inc., and then in October 2005 became TestEquity, LLC.  (*Id.* ¶¶ 6, 7).  TestEquity later "merged with and/or was acquired by" Evercore Limited Partners LLC.  (*Id.* ¶ 8).

     Plaintiff asserts that during the early years of his employment, he was "a trusted employee and received exemplary reviews."  (*Id.* ¶ 27).  However, he alleges that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 14-8590-MWF(Ex)            Date: August 13, 2015

Title:      Russell Piccirillo -*v*- Testequity, Inc. et al.

around 1989, he "began to be treated-disparately." (*Id.* ¶ 31). By way of example, Plaintiff asserts that, "[f]rom 1989 - 2009, [he] was ordered to answer all alarm calls, day or night, although this was not part of his job description," and he was not paid extra for the additional work. (*Id.* ¶ 31). Plaintiff alleges that conditions particularly took a turn in 1996, when Defendant Dan Copsey was hired to run the business. (*Id.* ¶¶ 33–34). As alleged in the SAC, "[i]n 1996, Copsey took away [Plaintiff's] monthly bonus & froze his pay for four years," placing his pay "on the low end of similar professional salaries." (*Id.* ¶ 35). Plaintiff also soon became "the only salaried employee ordered to punch in and out." (*Id.* ¶ 36).

      Plaintiff alleges in the SAC that when Copsey joined the business, "illegal practices started to become not only the practice of [TestEquity], but the actual policy of [TestEquity]." (*Id.* ¶ 37). Plaintiff asserts that "[TestEquity] began encouraging their employees to commit fraudulent acts which violated both penal and civil laws," for example, instructing them to "copy copyrighted programs and/or 'computer chips', and sell their 'refurbished units' as if they were new, and/or as if they originally had the programs which [TestEquity] upgraded by illegally installing the 'chips' into these units." (*Id.* ¶ 38). Plaintiff himself was allegedly put in charge "of making the decision of what used equipment would pass as new without being noticed by customers." (*Id.*). Those who participated in these schemes were "richly rewarded." (*Id.*).

      Plaintiff asserts that he "questioned the legality of [these actions] and was uncomfortable performing these questionable procedures." (*Id.* ¶ 39). He therefore tried to inform TestEquity's owners / former managers of these changes. (*Id.* ¶ 39). When Copsey learned that Plaintiff was criticizing his policies to others, he allegedly started retaliating against him. According to the SAC, "[t]his resulted in the loss of the company car, [Plaintiff's] desk and telephone, and gas card." (*Id.*). According to Plaintiff, the owners refused to take action because the business was starting to make a higher profit under Copsey. (*Id.*).

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-8590-MWF(Ex)                               Date:  August 13, 2015

Title:        Russell Piccirillo -*v*- Testequity, Inc. et al.

      Plaintiff alleges that as a result of his actions he was "shunned" by Copsey and his other co-workers, and that he "was demoted and moved to the warehouse, the least desirable of all locations." (*Id.* ¶¶ 40, 42). He also alleges that this harassment affected his home life. (*Id.*). Plaintiff asserts that he "became increasingly depressed, and [began] suffering from severe emotional distress and anxiety." (*Id.* ¶ 48).

      This harassment allegedly escalated in 2009 when his supervisor Yankijtas started isolating him from other employees. (*Id.* ¶ 50). Moreover, in 2010 after Plaintiff allegedly reported Yankijtas for "purchasing software already owned by [TestEquity]," Yankijtas "retaliated against [Plaintiff] by following him around everywhere, including the bathroom," taunting him, and randomly changing his start time at work. (*Id.* ¶¶ 51, 52). In the SAC, Plaintiff provides numerous other specific incidents to demonstrate the harassment he experienced at work.

      Plaintiff alleges that he continued to experience harassment until January 26, 2011, when he "had to leave work . . . due to high blood pressure and emotional distress." (*Id.* ¶ 50). On January 29, 2011, his doctor advised him to stay away from work due to his excessively high blood pressure. (*Id.* ¶ 54). Accordingly, Plaintiff sent a letter from his doctor to Terry Landers, V.P. of Human Resources, but she allegedly did not believe him and refused to file a Worker's Compensation claim on his behalf. (*Id.* ¶¶ 41, 55). Landers also tried to discourage Plaintiff from filing a Worker's Compensation claim himself. (*Id.*). Plaintiff asserts that Landers failed to advise him of the company's Long-Term Disability Plan, and that by the time he learned of the policy, "the Company had changed insurers and [Plaintiff] was not eligible for either policy." (*Id.*). The SAC explains that Plaintiff "was denied Unemployment Benefits due to [TestEquity] maintaining he was still employed but on 'medical leave,'" and was denied partial distribution of money from his Profit Sharing Plan ("PSP") due to his disability. (*Id.* ¶ 59). Moreover, Plaintiff was denied the opportunity to return to work. (*Id.* ¶ 61). Plaintiff alleges that as a result of these actions, in December 2012 he "had no choice but to file [for] Chapter 7 bankruptcy." (*Id.* ¶ 61).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-8590-MWF(Ex)                                      Date:  August 13, 2015

Title:     Russell Piccirillo -*v*- Testequity, Inc. et al.

    Plaintiff further explains that "during the last two years, [he] has been forced to [] use all legal means to assist him in procuring what are his legal rights," including: (1) in November 2012 he filed a discrimination case with DFEH, which was denied as untimely; (2) in 2013 he contacted the Department of Labor regarding the issues described above, and their investigation is allegedly still ongoing; (3) in 2013 he filed for unemployment online, which was denied "due to not having enough hours in quarters leading up to filing"; (4) in 2013, "Dept. of Labor National Contact Center re: FMLA - Service Request #1 - 108186911 opened," but there has been "no further contact with [Plaintiff] and [Plaintiff has] no idea if they contacted [TestEquity] directly"; (5) in May 2013, Plaintiff filed a complaint with the Department of Labor Civil Rights Center, and in May 2014, he received a reply that "his complaint was referred to the Dept. of Labor, Employee Benefits Security Administration, Office of Enforcement . . . for their consideration"; and (6) also in May 2013, Plaintiff filed a complaint with the Department of Insurance, Fraud Division, regarding TestEquity's handling of his Worker's Compensation claim, and a Detective Cunningham looked into the claims and indicated that TestEquity's Worker's Compensation insurance company had been notified on the day of the injury, an assertion that Plaintiff disputes. (*Id.* ¶ 72).

    Defendants TestEquity LLC and Daniel Copsey brought the present Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted, or, in the Alternative, Motion for More Definite Statement on June 11, 2015.  (Docket No. 26).  Plaintiff filed his Opposition to the Motion to Dismiss on June 29, 2015.  (Docket No. 27).  Defendants filed their Reply on July 6, 2015.  (Docket No. 28).

**Motion to Dismiss**

    In ruling on the Motion under Rule 12(b)(6), the Court follows *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-8590-MWF(Ex)          Date:  August 13, 2015

Title:     Russell Piccirillo -*v*- Testequity, Inc. et al.

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citation omitted). "All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 937 (9th Cir. 2008) (holding that a plaintiff had plausibly stated that a label referring to a product containing no fruit juice as "fruit juice snacks" may be misleading to a reasonable consumer).

      A motion for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) attacks the unintelligibility of the complaint, not simply the mere lack of detail, and is only proper when a party is unable to determine how to frame a response to the issues raised by the complaint. A court will deny the motion where the complaint is specific enough to apprise the defendant of the substance of the claim being asserted. *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996); *see also Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F. Supp. 940, 949 (E.D. Cal. 1981) (finding a Rule 12(e) motion proper "only where the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted"). A motion for a more definite statement is proper only where the complaint is "so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself." *Cellars v. Pac. Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999) (internal quotations omitted); *Boxall v. Sequoia Union High Sch. Dist.*, 464 F. Supp. 1104, 1114 (N.D. Cal. 1979) (finding a motion for a more definite statement should not be granted unless the defendant literally cannot frame a responsive pleading).

      **General lack of specificity**

      Defendants first argue that Plaintiff "lumps all the defendants together without any attempt to state facts showing who allegedly performed the alleged misconduct, how they performed the alleged misconduct, and when they performed the alleged misconduct," and as a result, "Defendants must speculate as to what they did to give rise to each of Plaintiff's causes of action." (Mot. at 5). Specifically, Defendants point out that Plaintiff attributes no substantive misconduct to either TestEquity LLC (which

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-8590-MWF(Ex)                    Date:  August 13, 2015

Title:     Russell Piccirillo -v- Testequity, Inc. et al.

is in fact, not once mentioned in Plaintiff's Statement of Facts) or to Daniel Copsey in support of each of his nine causes of action.  (*Id.*).  Defendants argue that Plaintiff rather "relies on his conclusory allegation that [these two] Defendants along with nine other defendants were the 'agent, employee or representative of each of the remaining defendants, and [were] acting within the course and scope of their authority as such agents, servants and employees with the permission, consent and ratification of their co-defendants.'"  (*Id.*).

Plaintiff argues in response that "Defendants have a clear picture of the allegations as well as whom they are against," and that "[Defendants] should not benefit from the obvious tactical decision to create a maze-like paradigm of connecting business entities which are in reality alter egos of each other."  (Opp. at 15).  In fact, Plaintiff makes a similar argument in the SAC, when it states that TestEquity "is a conglomerate of several different entities which were specifically formed in such a manner so as to make the correct designation of the appropriate entity for liability difficult to ascertain."  (SAC ¶ 3).  He also suggests in the SAC that "each of the . . . entity defendants act as alter egos of the other, and at times do take the employment identification number and/or corporate number of the other in a thinly veiled attempt at hiding asetts [sic] and perpetrating a fraud upon governmental, business and individual persons, defendants and creditors."  (*Id.* ¶ 18).

Plaintiff's reliance on the alter ego doctrine is misplaced.  To demonstrate that Defendants TestEquity LLC and Daniel Copsey are alter egos of the other defendants, Plaintiff would need to show: "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow."  *Wady v. Provident Life and Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1066 (C.D. Cal. 2002) (quoting *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300, 216 Cal. Rptr. 443 (1985)).  Plaintiff has not pleaded any facts that, accepted as true, could establish these elements.  *See Orosa v. Therakos, Inc.*, No. C-11-2143 EMC, 2011 WL 3667485, at *6 (N.D. Cal. Aug. 22, 2011) ("Conclusory allegations of 'alter

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-8590-MWF(Ex)           Date:  August 13, 2015

Title:      Russell Piccirillo -*v*- Testequity, Inc. et al.

---

ego' status are insufficient to state a claim. Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each.").

Plaintiff would perhaps have been better served by arguing that each defendant is liable under the integrated enterprise doctrine. *See Rhodes v. Sutter Health*, 949 F. Supp. 2d 997, 1003 (E.D. Cal. Feb. 1, 2013) ("The integrated enterprise test . . . determines whether two separate corporate entities should be considered a *single* employer."). Plaintiff, however, has failed to plead facts that would establish that the entity defendants are an integrated enterprise. *Id.* at 1005 ("When applying the [integrated enterprise] test, courts consider four factors: (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control."). In any event, it is not clear that such a doctrine would even be applicable to hold each entity defendant liable in this case. *Id.* at 1006 ("Courts applying California law have generally . . . limit[ed] the test's application to determining whether corporations having a parent-subsid[iary] relationship are interrelated.").

The Court suspects that in fact Plaintiff does not intend to hold each entity defendant liable, but rather is not sure at this point in the litigation which of the entity defendants can properly be held liable for the actions alleged in the SAC. The Court recognizes the difficulty presented here, where the employer has changed its name and corporate structure over time. However, the Court agrees with Defendants that Plaintiff's claims fail, since they are grounded in alleged misconduct that cannot be attributed to Defendants under the law. A defendant cannot defend against a claim where no facts have been alleged tying it to the challenged conduct.

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss. This dismissal, however, is *with leave to amend*. The third amended complaint must specifically connect the alleged misconduct to each of the named defendants, distinguishing which claims are brought against each. To the extent Defendant TestEquity LLC can assist Plaintiff in identifying the proper entity defendants to defend this action, it is **ORDERED** to do so.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 14-8590-MWF(Ex)            Date: August 13, 2015

Title:      Russell Piccirillo -*v*- Testequity, Inc. et al.

       While the Court thus concludes that the SAC fails to identify which claims are alleged against these Defendants, and therefore the Motion is granted, it nevertheless addresses Defendants' other arguments.

### First claim: wrongful termination against public policy

       Plaintiff's first claim alleges that "defendants" wrongfully terminated him in violation of public policy. (SAC ¶¶ 82-116). To succeed on this claim, Plaintiff must demonstrate, among other things, that he was terminated by Defendants. *See Holmes v. Gen. Dynamics Corp.*, 459 F. Supp. 2d 959, 967 (E.D. Cal. 2006). Defendants argue in their Motion, however, that Plaintiff has failed in his SAC "to allege any facts demonstrating how he was constructively discharged, including most importantly, when he was allegedly constructively discharged." (Mot. at 6).

       The Court disagrees. "[T]o establish a constructive discharge, an employee must plead and prove . . . that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that reasonable person in the employee's position would be compelled to resign." *See Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1246, 32 Cal. Rptr. 2d 223 (1994), overruled in part on another ground in *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 59 Cal. Rptr. 2d 20 (1996). Plaintiff asserts that he was constructively discharged when Defendants "demoted, harassed, followed, impugned, converted funds and tore up his marriage." (Opp. at 19). Plaintiff provides detailed factual allegations to support his assertion that his working conditions were "intolerable." While the SAC does not establish the day that Plaintiff resigned or was terminated, it does provide facts to support Plaintiff's argument that he was terminated. (*See, e.g.*, SAC ¶ 91 ("During Plaintiff's dissolution action . . . Defendants clearly stated and testified under oath that Plaintiff no longer was employed by TestEquity, as of January 2011.")).

       The Court notes that there are some conflicting allegations in the SAC. For example, the SAC explains that after Plaintiff's doctor advised him on January 29,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-8590-MWF(Ex)           Date:  August 13, 2015

Title:   Russell Piccirillo -v- Testequity, Inc. et al.

2011 "to stay out of work due to his excessively high blood pressure," he was placed on short term disability rather than terminated.  (SAC ¶ 61) ("[Plaintiff] received EDD short term disability payments from February 2011 through February 2012.").  Moreover, Plaintiff was unable to collect unemployment "since [TestEquity] refused to formally terminate him."  (*Id.*).  However, taking the allegations as a whole, it seems clear that at some point on or after January 2011, Plaintiff resigned, and was thereafter denied compensation and denied the opportunity to return to work.  While the Court *encourages Plaintiff to further clarify his allegations in any third amended complaint*, it is not inclined to dismiss this claim at this stage.

     Nor is the Court inclined to require a more definite statement as to the date of Plaintiff's termination.  Such specificity in pleading is not required by Federal Rule of Civil Procedure 8.  Moreover, this is exactly the sort of information which should be obtained through the discovery process.

     **Second claim: wrongful termination in breach of contract**

     Plaintiff's second claim alleges that "Defendants and each of them . . . did terminate Plaintiff despite a contractual and legal obligation to retain Plaintiff unless there was just cause to terminate."  (SAC ¶ 99).  Defendants argue that this claim should be dismissed "because the Employee Handbook (the only alleged contract at issue) does not constitute an employment agreement, and even if it did, Plaintiff has not adequately alleged any breach."  (Reply at 5).

     The Court again disagrees.  The SAC indicates that there was an agreement between the parties that required "defendants" to follow certain procedures before terminating Plaintiff.  As this argument requires the Court to examine the nature of the agreement between the parties, the Court declines to address this issue on a Motion to Dismiss.  Moreover, Defendants do not identify any additional facts they need in order to respond to this claim, so any request for more definite statement is denied.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-8590-MWF(Ex)                              Date:  August 13, 2015

Title:       Russell Piccirillo -v- Testequity, Inc. et al.

**Fifth Claim: Retaliation**

Plaintiff's fifth claim is for "retaliation."  (SAC ¶¶ 141-148).  Defendants argue that this claim must be dismissed because Plaintiff, "does not identify the relevant statute or case law upon which he is asserting his claim of retaliation," making the claim "uncertain, ambiguous, and unintelligible."  (Mot. at 8).

The Court does not agree that Plaintiff has failed to state a claim.  The SAC specifically states that, "Defendants and each of them [retaliated against Plaintiff] for Plaintiff's refusal to participate and for his reporting of Defendants and each of their illegal and wrongful actions to appropriate Government officials as well as contacting the Department of Labor for violation and withholding of Plaintiff's PSP" (SAC ¶ 143), and that "Defendants . . . did retaliate against Plaintiff's employment due to the fact that he was refusing to participate in illegal actions, because he was disabled and because he insisted on his right to claim benefits under the Worker's Compensation Law" (*id.* ¶ 145).  These specific allegations are sufficient to state a claim for relief.

While a closer question, the Court is also inclined to deny Defendants' motion for a more definite statement as to this claim.  Plaintiff's failure to provide the statutory basis of his retaliation claim renders the claim ambiguous, but the Court does not agree that the claim is "so . . . ambiguous that Defendant[s] cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e); *cf. Sumera v. Holder*, 4:13-cv-1950-KAW, 2014 WL 3058278, at *3 (N.D. Cal. July 3, 2014) (granting motion for a more definite statement because "Plaintiff has failed to plead each cause of action separately, lumping together all Title VII claims, irrespective of whether the claims are based on alleged race, age, or national origin discrimination, harassment, or retaliation").  The claim is clearly one for retaliation, against which Defendants can competently file an Answer.

Nevertheless, the Court encourages Plaintiff to identify the relevant statutory basis of his retaliation claim when drafting any third amended complaint, as doing so will aid in the effective litigation of this case.

_____
**CIVIL MINUTES—GENERAL**                                                                                  11

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-8590-MWF(Ex)                          Date:  August 13, 2015

Title:     Russell Piccirillo -v- Testequity, Inc. et al.

### Seventh Claim: Whistleblower

Plaintiff's seventh claim is for "Whistle blower."  (SAC ¶¶ 149-160).  Defendants again move to dismiss this claim because "it does not identify the relevant statute or case law upon which he is asserting his claim of retaliation and the specific grounds supporting his claim."  (Mot. at 9).  *To aid the Court and the defendants in efficiently resolving this dispute, Plaintiff should indeed identify the legal basis of this claim in any amendment.*  However, the Court does not agree that dismissal is appropriate.  The SAC explains that Plaintiff "was subjected to adverse employment action and a hostile working environment," after he "contacted [the] Department of Labor, EEOC, USCIS, OSHA, DEPT. OF INSURANCE, IRS, DEPT. OF CIVIL RIGHTS, HOMELAND SECURITY and other Governmental entities regarding Defendants' and each of their illegal actions."  (SAC ¶ 150, 152).  These details put Defendants on notice as to the basis of the claim.

Moreover, the Court is not convinced that Defendants have shown they are entitled to a more definite statement.  While Plaintiff's failure to provide the statutory basis of his "whistleblower" claim renders the claim somewhat ambiguous, the Court does not agree that the claim is "so . . . ambiguous that Defendant[s] cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).

### Ninth Claim: ADA Discrimination

Plaintiff's ninth claim is captioned "ADA Discrimination."  (SAC ¶ 170-172).  However, as Defendants point out, Plaintiff does not reference the Americans with Disabilities Act in this claim, but rather cites to the equivalent California anti-discrimination law (FEHA) as the applicable statute.  Accordingly, the Court **DISMISSES** the ADA claim *with leave to amend*, as Plaintiff does not seem to be pursuing a federal claim under the ADA, and the allegations consist solely of legal conclusions.

### Twelfth Claim: Negligence

---
**CIVIL MINUTES—GENERAL**                                                              12

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-8590-MWF(Ex)                                    Date:  August 13, 2015

Title:     Russell Piccirillo -v- Testequity, Inc. et al.

In their Motion, Defendants argue that Plaintiff cannot state a claim for negligence because the sole and exclusive remedy of an injured employee against an employer is the right to receive workers' compensation benefits.  (Mot. at 13).  Plaintiff responds that this rule does not apply where an employer "steps outside the proper role, or engages in conduct that is not normally incidentally [sic] to the employer/employee relationship, or violates public policy."  (Opp. at 25 (citing *Gomez v. Acquistapace*, 50 Cal. App. 4th 4740 (1996)).  The Court agrees.  The limitation on bringing tort claims against an employer, "does not apply . . . when the 'injury is a result of conduct, whether in the form of discharge or otherwise, not seen as reasonably coming within the compensation bargain.'"  *Kovatch v. Cal. Cas. Mgmt. Co.*, 65 Cal. App. 4th 1256, 1277, 77 Cal. Rptr. 2d 217 (1998) (holding that the Workers' Compensation Act does not preempt intentional infliction of emotional distress claims predicated upon wrongful termination in violation of public policy) (quoting *Shoemaker v. Myers*, 52 Cal. 3d 1, 19–20, 276 Cal. Rptr. 303 (1990), *overruled on other grounds by Aguilar v. Atlantic Richfield Co.*, 25 Cal. 4th 826, 107 Cal. Rptr. 2d 841 (2001)).  While Plaintiff labels this claim one for "negligence," it in fact seems to be based on Plaintiff's "severe and extreme emotional stress" caused by Defendants' actions.  (SAC ¶¶ 190–191).  Accordingly, the Court believes this claim can survive the Motion to Dismiss.

**Statute of Limitations**

Defendants next argue that Plaintiff's claims are barred by the statute of limitations.  Specifically, Defendants explain that while it is "difficult to asses[s] when Plaintiff claims each of his causes of action accrued[,] . . . the thrust of his SAC relies on harm that occurred well outside any of the applicable statute of limitations."  (Mot. at 10).

"Where the facts and dates alleged in a complaint demonstrate that the complaint is barred by the statute of limitations, a Federal Rule of Civil Procedure 12(b)(6) motion should be granted."  *Ritchie v. United States*, 210 F. Supp. 2d 1120, 1123 (N.D. Cal. 2002).  There is no requirement, however, that affirmative defenses, including

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-8590-MWF(Ex)                                Date:  August 13, 2015

Title:     Russell Piccirillo -v- Testequity, Inc. et al.

statutes of limitation, appear on the fact of the complaint. *Hyatt Chalet Motels, Inc. v. Carpenters Local 1065*, 430 F.2d 1119, 1120 (9th Cir. 1970). "When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (1980).

Here, Defendants acknowledge that they cannot determine when certain alleged misconduct occurred, but are rather relying on the assumption that the actions are barred because "it is evident that the underlying facts that support Plaintiff's causes of action occurred 10-20 years ago." (Reply at 6). While the Court is sympathetic to Defendants' argument, emphasized at the hearing, that almost all of the actions alleged took place in January 2011 or before, the Court nevertheless concludes that it cannot determine at this stage that the claims are absolutely barred by the applicable statute of limitations. Plaintiff's lack of clarity is simply an insufficient basis on which to grant a motion to dismiss, because Defendants cannot definitively demonstrate that the claims are time-barred. Accordingly, any motion to dismiss on this basis would be denied.

Moreover, a Rule 12(e) motion for a more definite statement is not appropriate here, "where the substance of the claim has been alleged, even though some of the details are omitted." *Sagan v. Apple Computer Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994) (citing *Boxall*, 464 F. Supp. at 1113-14). The statute of limitations defense is better raised after discovery.

**Exhaustion of Administrative Remedies**

Defendants next argue that Plaintiff's third, fifth, seventh, and ninth claims should be dismissed to the extent they are brought under FEHA, because Plaintiff failed to timely exhaust his administrative remedies. *See Rojo v. Kliger*, 52 Cal.3d 65, 83, 276 Cal. Rptr. 130 (1990) ("[E]xhaustion of the FEHA administrative remedy is a precondition to bringing a civil suit on a statutory cause of action"). Specifically, Defendants argue that Plaintiff was required to file a timely and sufficient administrative complaint with the California Department of Fair Employment and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-8590-MWF(Ex)                    Date:  August 13, 2015

Title:     Russell Piccirillo -v- Testequity, Inc. et al.

Housing ("DFEH") and receive a right-to-sue letter within one year after the alleged adverse employment action.  Cal. Gov. Code § 12960(d).

In determining whether the exhaustion requirement has been met, California law dictates that FEHA provisions are to be liberally construed to accomplish its purposes, including the resolution of potentially meritorious claims on the merits.  *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 819 (2001); *Stearns v. Fair Emp't Practices Comm'n*, 6 Cal. 3d 205, 214 (holding that DFEH charges should be construed liberally for same reasons that federal EEOC complaints should be construed liberally).

In reviewing the exhaustion question in this case, the Court there construes the SAC liberally.  Plaintiff asserts in the SAC that, "on June 23, 2014, Plaintiff . . . filed a written grievance timely charge of retaliation and disability discrimination with the California Department of Fair Employment and Housing (DFEH) and with the EEOC on June 05, 2014," and "was issued a right-to-sue letter on August 25, 2014, thus permitting him to file a lawsuit alleging harassment, discriminatory and retaliatory employment practices under the California Fair Employment & Housing Act."  (SAC ¶ 23).  While further discovery may demonstrate that this grievance was filed outside the one-year limitations period, the Court finds that Plaintiff has adequately pleaded administrative exhaustion under FEHA.

At the hearing, Defendants argued that there is also a requirement that the grievance be filed within a certain amount of time after the alleged violations.  However, as explained above in the context of the statute of limitations argument, Plaintiff's allegations are too vague from which to determine at the pleading stage that they are barred.

### Claims Barred Against Defendant Copsey

As discussed above, Plaintiff asserts each of his nine causes of action against each of the eleven defendants, including individual Defendant Daniel Copsey.  Defendants argue that some of these claims fail as a matter of law because an individual defendant cannot be held liable for discrimination under FEHA.  The Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-8590-MWF(Ex)              Date:  August 13, 2015

Title:     Russell Piccirillo -*v*- Testequity, Inc. et al.

declines to address this issue here, however, as it has already ordered Plaintiff to file an amended complaint specifically connecting the alleged misconduct to the each of the named defendants, distinguishing which claims are brought against each.  In doing so, Plaintiff must of course comply with applicable law.  *See Reno v. Baird*, 18 Cal. 4th 640, 645, 76 Cal. Rptr. 2d 499 (1998) (concluding that only employers may be liable for discrimination, but non-employer individuals may be help personally liable for harassment); *Jones v. Lodge at Torrey Pines Partnership*, 42 Cal. 4th 1158, 72 Cal. Rptr. 3d 624 (2008) (applying *Reno*'s rationale to retaliation claims, and concluding that non-employer individuals are not personally liable for retaliation).

**Conclusion**

In sum, the Court **GRANTS** the Motion to Dismiss *with leave to amend*.  Plaintiff should file an amended complaint within 21 days of the entry of this Order.  The amended complaint should connect the alleged misconduct to the each of the named defendants, distinguishing which claims are brought against each defendant.  While the Court will accept the Third Amended Complaint, it will not accept a fourth.  Plaintiff's failure to cure the deficiencies noted in this Order will result in the dismissal of this action with prejudice as to the moving Defendants.

If Plaintiff is uncertain which corporate entity is responsible and Testequity is intransigent, Plaintiff should name only the most plausible entities in the Third Amended Complaint.  The Court could then freely allow amendment later, pursuant to Rules 15 and 16, if the initial disclosures or discovery are necessary to identify the proper Defendants.

Moreover, as explained above, the Court deems Karla Ksan and Leslie Gale voluntarily dismissed from the action.

IT IS SO ORDERED.